UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | |
|---|---|
| TINA CATHERINE PURVIS, ) | |
| ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | NO. 5:24-CV-00007-MAS |
| ) | |
| LELAND DUDEK, ) | |
| *Acting Commissioner of the Social* ) | |
| *Security Administration*, ) | |
| ) | |
| ) | |
| Defendant. | |

### MEMORANDUM OPINION & ORDER

Tina Catherine Purvis ("Purvis") appeals the Commissioner's denial of her application for Supplemental Security Income ("SSI") benefits under Title XVI of the Social Security Act and Social Security Disability Income (SSDI) under Title II. The Court addresses the parties' competing summary judgment briefs. [DE 15 and 17]. For the reasons outlined below, the Court finds that Administrative Law Judge ("ALJ") Boyce Crocker's decision was supported by substantial evidence and will grant the Commissioner's motion for summary judgment.

### I. FACTUAL AND PROCEDURAL BACKGROUND

#### A. PROCEDURAL HISTORY

Purvis filed an application for SSI and SSDI on January 21, 2021.[1] [Administrative Transcript ("Tr.") at 79, 88, 220, 227, found at DE 12]. Purvis alleged disability beginning on February 2, 2019, due to arthritis, anxiety, asthma, blood pressure, acid reflux and irritable bowel syndrome ("IBS").[2] [Tr. at 79, 88, 220, 227]. The Social Security Administration denied Purvis's claim initially on September 28, 2021, and again upon reconsideration on March 18, 2022. [Tr. at 97-100]. ALJ Crocker held a hearing on January 12, 2023, and he issued an unfavorable decision dated February 21, 2023, concluding that Purvis was not disabled. [Tr. at 15-35]. The Appeals Council then declined Plaintiff's request for review, making the ALJ's February 2023 decision the final agency decision for purposes of judicial review. 20 C.F.R. §§ 416.1481, 422.210(a). This appeal followed.

---

[1] "The standard for disability under both the DIB and SSI programs is virtually identical." *Roby v. Comm'r of Soc. Sec.*, No. 12-10615, 2013 WL 451329, at *3 (E.D. Mich. Jan. 14, 2013), *report and recommendation adopted*, 2013 WL 450934 (E.D. Mich. Feb. 6, 2013); *see also Elliott v. Astrue*, No. 6:09-CV-069-KKC, 2010 WL 456783, at *4 (E.D. Ky. Feb. 3, 2010). The Court generally references SSI and disability insurance benefits case law interchangeably, mindful of the particular regulations pertinent to each type of claim.

[2] Purvis previously applied for SSI and SSDI in May 2012. That claim was denied after a hearing in September 2013. [Tr. 66-75]. The ALJ considered the prior ALJ's decision dated in September 2013 in accordance with *Dennard v. Sec'y of HHS*, 907 F.2d 598 (6th Cir 1990) and Acquiescence Ruling (AR) 98-3(6), and *Drummond v. Comm'r*, 126 F.3d 837 (6th Cir. 1997) and AR 98-4 (Tr. 18-19).

B. **PERSONAL AND MEDICAL HISTORY**

Plaintiff was 46 years old on the alleged onset date and subsequently entered a new age classification as of the date of the ALJ's decision. [Tr. 15, 88]. She reported completing four years of college and has no past relevant work. [Tr. 30, 97].

Purvis had infrequent treatment from 2020 through the date of the hearing. A brief summary of some of the medical records is as follows:

On June 24, 2020, Purvis saw Laurie K. Garner, PA-C, for joint pain and TMJ. [Tr. 361]. During the examination, she was noted to have anxious and agitated mental status, but with normal tone and motor strength, normal movement of all extremities, a right toe bunion, and no cyanosis, edema, or varicosities. [Tr. 361]. On October 27, 2020, Plaintiff saw Caitlin Midkiff Davidson, NP, for a consultation of polyarthralgia. [Tr. 369]. She complained of pain in her hands and wrists, as well as an inability to walk due to the pain she experiences. [Tr. 369]. Purvis's had a lumbar spine x-ray in September 2021, which revealed lower lumbar facet joint arthritis with three millimeters of anterior listhesis at the L4-5 level; mild T12-L4 degenerative disc disease; mild to moderate L4-5 degenerative disc disease; severe L5-S1 degenerative disc disease; and mild lumbar scoliosis either congenital, positional or secondary to muscle spasm. [Tr. 461].

Purvis was not seen again until March 28, 2022, when she was seen at Family Care of the Bluegrass for medication refills and complained of right shoulder pain. [Tr. 483]. Purvis thereafter was seen several months later on October 17, 2022, at the University of Kentucky Health Care, during which she was continued on medication

3

LEF, started on another medication, and referred to physical therapy for her shoulder and podiatry for foot pain. [Tr. 27].

An October 12, 2022, an x-ray of the cervical spine revealed moderate to severe C5-6 disc narrowing with mild anterior and posterior hypertrophic change. [Tr. 518]. On October 17, 2022, Purvis was seen at the University of Kentucky. [Tr. 598-511]. She was diagnosed with seronegative rheumatoid arthritis, with left ankle swelling, and uncontrolled inflammation in the left ankle. She was continued on her medication, started on new medication, referred to physical therapy, podiatry, and for an MRI. [Tr. 598-511]. An October 20, 2022, MRI of Purvis's lumbar spine revealed right paracentral disc protrusion at L5-S1 and multilevel degenerative disc disease with spondylosis. [Tr. 512-24].

### C. MEDICAL SOURCE OPINIONS

Purvis underwent several consultative examinations as part of her disability application. [Tr. 27 and 28]. The ALJ found state agency consulting physicians Dr. Gonalez and Dr. Brake's opinions "generally persuasive, as they are internally consistent and supported by the evidence as reviewed at the time they were given[.]" [TR. 28]. The ALJ found the remainder of the opinions from the consultative examiners (both Purvis's and the state agency consultations) only somewhat persuasive because of the generally mild to moderate test findings and infrequent treatment record. [Tr. 27 and 28]. Though both parties discuss the medical source opinions briefly, Purvis's primary argument is that "[t]he ALJ's finding that the state agency consultant's opinions were persuasive does little to explain how Plaintiff's objective findings to substantiate pain were considered." [DE 15 at Page ID# 591].

Purvis further contends that the ALJ utilized these medical source opinions to mischaracterize the evidence because the ALJ described the state agency opinions as consistent with the scans that "show generally mild to moderate findings" [Tr. 28] because the x-rays and MRIs all also revealed some severe findings. [DE 15 at Page ID# 591]. Without reweighing the evidence, the Court, upon review of the medical records, agrees with the ALJ's characterization of the scans as revealing "*generally* mild to moderate findings" (emphasis added) and notes the ALJ never claimed the scans *only* revealed mild to moderate findings, nor did the ALJ ever declare the scans revealed *no* severe findings. The ALJ simply provided the correct observation that the scans in the record had primarily (but not only) mild and moderate findings.

### D. ALJ'S DECISION

The ALJ found that Purvis had the severe impairments of COPD/asthma with continued nicotine/tobacco use, obesity, polyarthralgia, degenerative disc disease of the lumbar and cervical spine, and major depressive disorder, but found that her other physical impairments, including GERD, irritable bowel syndrome, hyperlipidemia, hypertension, hyperglycemia, gout, and TMJ, do not cause functional limitations. [Tr. at 21]. The ALJ designated the latter impairments "not severe" and considered them in combination with the severe impairments in defining Purvis's Residual Functional Capacity ("RFC"). The ALJ concluded that although Purvis had severe impairments within the meaning of the applicable regulations, Purvis does not have any impairments or combination of impairments that meet or medically equal the severity of any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. § 416.920(d), 416.925 and 416.926).

5

The ALJ went on to find that Purvis could perform light work as defined in 20 C.F.R. § 416.967(b) with the following limitations (among others): can never climb ladders, ropes, or scaffolds; occasionally climb ramps and stairs; and occasionally stoop, kneel, crouch, and crawl; avoid concentrated exposure to extreme cold, vibration, and pulmonary irritants; and avoid all exposure to unprotected heights and moving machinery; and perform simple, routine work tasks for extended periods of 2-hour segments. [Tr. at 24]. Based on these limitations, the ALJ asked the vocational expert ("VE") if jobs exist in the national economy for an individual with Purvis's age, education, work experience, and RFC. Based on the VE's resulting testimony, the ALJ found that Purvis could perform the requirements of representative unskilled light work such as merchandise marker, routing clerk, and a housekeeping cleaner. [Tr. at 30]. Thus, the ALJ determined Purvis is not disabled under the Social Security Act. [Tr. at 30].

## I. LEGAL FRAMEWORK

Judicial review of the ALJ's decision is deferential and strictly limited. The Court's sole task is to determine whether the ALJ applied the correct legal standards and whether the ALJ's factual findings are supported by substantial evidence in the record. *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009); *Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 422 (6th Cir. 2008); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive[.]"). Substantial evidence is "more than a scintilla of evidence, but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of*

*Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). "The substantial-evidence standard allows considerable latitude to administrative decision makers" and "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts." *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (quoting *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

The Court must make its substantial evidence determination based on the record. *Cutlip*, 25 F.3d at 286. However, the Court need not comb the entire (lengthy) record in search for facts supporting under-developed arguments. [*See* DE 16 (General Order No. 13-7) (citing *Hollon ex rel. Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 491 (6th Cir. 2006)) ("The parties shall provide the Court with specific page citations to the administrative record to support their arguments. The Court will not undertake an open-ended review of the entirety of the administrative record to find support for the parties' arguments.")]. Further, the Court may not "try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). The Court must affirm the ALJ's decision if there is substantial evidence in the record to support it, even if substantial evidence might also support the opposite conclusion. *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 393 (6th Cir. 2004); *Mullen*, 800 F.2d at 545. Likewise, the Court must affirm any ALJ decision supported by substantial evidence, even if the Court itself might have reached a different original result. *See Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389–90 (6th Cir. 1999).

> For context, the Court briefly outlines the proper five-step sequential analysis as conducted by an ALJ in determining disability status. *See Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994); 20 C.F.R. §§ 416.920(a), 404.1520(a). In the first step, the ALJ decides whether the claimant is performing substantial gainful activity. 20 C.F.R. §§ 416.920(a)(4)(i), 404.1520(a)(4)(i). In the second step, the ALJ determines whether the claimant suffers from any severe impairments. *Id.* at §§ 416.920(a)(4)(ii), 404.1520(a)(4)(ii). In the third step, the ALJ decides whether such impairments, either individually or collectively, meet an entry in the Listing of Impairments. *Id.* at §§ 416.920(a)(4)(iii), 404.1520(a)(4)(iii). In the fourth step, the ALJ determines the claimant's residual functional capacity ("RFC") and assesses whether the claimant can perform past relevant work. *Id.* at §§ 416.920(a)(4)(iv), 404.1520(a)(4)(iv). In assessing a claimant's RFC, the Administrative Law Judge must necessarily consider the subjective allegations of the claimant and make findings. 20 C.F.R. §§ 404.1529, 416.929; Social Security Ruling 16-3p ("SSR 16-3p"). A claimant's statement that he is experiencing pain or other symptoms will not, taken alone, establish that he is disabled; there must be medical signs and laboratory findings which show the existence of a medical impairment that could reasonably be expected to give rise to the pain and other symptoms alleged. 20 C.F.R. §§ 404.1529(a), 416.929(a); SSR 16-3p.

*Sikes v. Kijakazi*, 2021 WL 3553490, at *9 (W.D. Ky. Aug. 11, 2021).

Finally, in the fifth step, the burden shifts to the Commissioner. The ALJ must consider and decide whether there are jobs that exist in significant numbers in the national economy that the claimant could perform based on RFC, age, education, and work experience. *Id.* at §§ 416.920(a)(4)(v), 404.1520(a)(4)(v). If the ALJ determines at any step that the claimant is not disabled, the analysis ends there.

## II.    ANALYSIS

### THE ALJ PROPERLY CONSIDERED PURVIS'S SUBJECTIVE REPORTS OF HER SYMPTOMS IN RELATION TO THE MEDICAL AND OTHER EVIDENCE

Purvis contends that the ALJ summarized the evidence without providing an adequate explanation as to why Purvis's subjective allegations of pain and other symptoms were rejected. Purvis complains the ALJ's decision "does not point to

8

evidence that would tend to show that Purvis's allegations are not substantiated." [DE 15 at Page ID #591].

An ALJ's assessment of a claimant's subjective allegations is accorded great weight and deference because the ALJ can observe a witness' demeanor. It is the job of the ALJ, and not the reviewing court, to evaluate Plaintiff's subjective statements. *Foster v. Halter*, 279 F.3d 348, 353 (6th Cir. 2001) ("Our role is not to . . . examine the credibility of the claimant's testimony."). An ALJ complies with the legal standards, and the court will affirm an ALJ's finding regarding Plaintiff's subjective allegations, so long as the ALJ gives specific reasons that are supported by the record. 20 C.F.R. § 404.1529; SSR 16-3p. The Sixth Circuit has established a test for evaluating a claimant's assertions of disabling pain: "First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such severity that it can reasonably be expected to produce the alleged disabling pain." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997).

As part of the ALJ's assessment of Purvis's RFC, he considered whether her reported symptoms were consistent with other evidence. [Tr. 23-27]. Ultimately, the ALJ concluded that while Purvis's medically determinable impairments could reasonably be expected to cause her alleged symptoms, her statements concerning the intensity, persistence, and limiting effects of those symptoms were not entirely

9

consistent with the medical evidence and other evidence in the record. [Tr. at 25].

The ALJ supported his finding, stating:

> As for the claimant's statements about the intensity, persistence, and limiting effects of his or her symptoms, they are inconsistent because the medical evidence does not support the severity alleged. On February 23, 2021, the claimant reported her pain had continued and she had to quit babysitting (Exhibit D2F pg. 48), indicating that prior to this she was babysitting. Two months later, on April 16, 2021, the claimant reported decreased pain, no swelling, and greater strength, after starting her new medication (Exhibit D2F pg. 62). On July 21, 2021, the claimant reported being stable on her medications (Exhibit D5F pg. 19).
>
> Regarding the claimant's COPD/asthma with continued nicotine/tobacco use, obesity, polyarthralgia, and degenerative disc disease of the lumbar and cervical spine, although the claimant has an alleged onset date of February 2, 2019, the earliest treatment records submitted begin in June of 2020. On June 24, 2020, the claimant was seen at Lexington Clinic, to establish care. She was seen via telehealth video, reported joint pains, back pain, chronic cough, and not feeling well. She was assessed with multiple joint pain and muscle pain. On July 15, 2020, the claimant returned reporting knots in her wrist and ankles, as well as ear pain. The claimant was treated for nonsevere impairments and was diagnosed with multiple joint pain (Exhibit D1F). [TR. at 25].

[Tr. 25]. *See* 20 C.F.R. § 416.929(c)(2) ("[O]bjective medical evidence . . . is a useful indicator to assist us in making reasonable conclusions about the intensity and persistence of [the claimant's] symptoms, and the effect those symptoms . . . may have on [her] ability to work."). Purvis argues the ALJ made a "boilerplate conclusion" and did not connect any of the evidence to Purvis's subjective complaints. This is not the case. The ALJ considered Purvis's function report, in which she (and her mother) described her difficulty with self-care, walking, standing, typing, putting on socks and shoes, cooking, driving and sleeping. [Tr. at 270-85 and 47-48]. However, the ALJ specifically mentioned all of these reported limitations, saying:

10

> She testified that she cannot stand for very long before needing to sit, She testified that she has difficulty (can hardly) writing because of her hands and that her writing looks like chicken scratch. She testified that she would have trouble typing due to her hands. She testified that she had a right shoulder injury, with torn ligaments. She testified that her pain was worst in her hands, wrists, ankles, and feet, with constant pain that leads to depression. She testified that she lives upstairs and can climb up and down the stairs but is weak when she reaches the end of the stairs. She testified that she can only walk half a block, has to elevate her legs "all the time" at least 3-4 times a day for 30-60 minutes.

[Tr. at 24 and 25]. The ALJ noted that in October 2020, Purvis reported joint pain, which had started a year prior, and pain in her hands, wrists, and feet. [Tr. 25]. However, her physical examination showed full range of motion in the spine, shoulders, elbows, wrists, knees, and ankles. [Tr. 25]. Purvis had one swollen joint and eight tender joints, was diagnosed with polyarthralgia, and was prescribed a prednisone taper. [Tr. 25]. Purvis reported continued pain during her medical appointments in November 2020 and February 2021, but when she returned for a follow-up visit in April 2021, she reported that she thought the medication was helping, her pain had decreased, and she had no joint swelling since starting the medication Leflunomide. [Tr. 26]. Although Purvis reported shoulder pain and painful motion with active elevation at her next visit in March 2022, her physical examination showed full range of motion of her right shoulder and her right shoulder x-rays were unremarkable. [Tr. 27]. The ALJ described all of these visits in his determination.

The ALJ also considered Plaintiff's diagnostic tests, which generally showed slight, mild, or moderate findings [Tr. 25-27]. Plaintiff argues that she "supported her claim with objective evidence which . . . support the severity of her pain

11

allegations," and points to a September 2021 x-ray of the lumbar spine, an October 2022 x-ray of the cervical spine, an October 2022 MRI of the lumbar spine, and November 2022 lower extremity arterial testing. [DE 15 at Page ID# 589]. The ALJ discussed those four tests [Tr. 27-28, 461, 518, 524]. Although the ALJ did not expressly note the "moderate to severe" and "severe" findings of the September 2021 lumber x-ray and October 2022 MRI, the ALJ mentioned both tests, noting also the many mild findings in the x-ray and the "annular bulges at multiple levels, paracentral disc protrusion at L5-S1 that contacts the S1 nerve root, and multilevel degenerative disc disease with spondylosis" in the MRI report. [Tr. 27]. The ALJ further considered that the lower extremity arterial testing only showed normal and mild findings, with one borderline and one moderate finding. [Tr. 27]. Finally, the ALJ also explicitly considered the severe findings of the cervical spine x-ray. [Tr. 27].

Considering all of these tests, as well as the treatment Purvis received, the ALJ determined that Purvis's subjective complaints were not consistent with the medical records. Explaining this, the ALJ noted that Purvis had been babysitting prior to February 23, 2021, that in April 2021 Purvis reported decreased pain, and by July 2021, she was stable on her medications. [Tr. 25]. Finally, the ALJ considered that Purvis had an "infrequent treatment record" which was consistent with "light limitations." [Tr. 27]. The ALJ concluded that Purvis's "scans show generally mild to moderate findings and the infrequent treatment does not support greater limitations." [Tr. 28].

12

All of these explanations from the ALJ more than sufficiently counter Purvis's argument that the ALJ did not provide adequate explanation or good reasons within the requirements of the regulations for discounting Purvis's subjective allegations. These explanations likewise address inconsistencies between the evidence in the record and Purvis's description of her symptoms.

Purvis's reply essentially repeats the arguments in her initial brief and does not change the Court's analysis here. The Court disagrees with Purvis's argument in the reply that the ALJ is specifically "tasked with discussing the evidence and explaining why *severe* objective findings did not support Purvis's subjective complaints." [DE 18 at Page ID# 609]. First, as the Court has already noted, the ALJ did explicitly discuss some (though not every) severe finding in the medical records. [Tr. 22, 25-28]. And second, the ALJ explained adequately that the many normal, mild, and moderate objective findings, as well as Purvis's own reports of her activity that were inconsistent with her subjective complaints. [*e.g.*, Tr. 23 ("She testified that she . . . cannot wash dishes . . . and later testified that she can only stand long enough to do one load of dishes.") and Tr. 25 ("the claimant reported her pain had continued and she had to quit babysitting . . . indicating that prior to this she was babysitting.")].

When reviewing the Commissioner's disability conclusion, we are "limited to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards." *Makela v. Comm'r of Soc. Sec.*, 2022 WL 9838285, at *3 (6th Cir. 2022) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir.

13

2007). For the reasons stated above, the Court finds the ALJ's evaluation of Purvis's subjective complaints was reasonable and supported by the record, and that the ALJ properly considered the entire record; therefore, the Court will not disturb the ALJ's ruling.

### III.   CONCLUSION

For the reasons stated above, and the Court being sufficiently advised, **IT IS ORDERED** that the Commissioner's motion for summary judgment [DE 17] is **GRANTED** and Purvis's competing motion for summary judgment [15] is **DENIED**. A corresponding Judgment will follow.

Entered this 29th of March, 2025.



MATTHEW A. STINNETT
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF KENTUCKY